Good morning your honors. May it please the court. My name is Marianne Dugan and I represent the plaintiffs appellants in this case I will try to reserve five minutes for rebuttal and I will watch the clock. I made myself a big sticky note As you know, I'm sure this case has been before this court before in the case of Environmental Protection Information Center and it involves Two statutes the National Forest Management Act and the National Environmental Policy Act the NIFMA claims Generally speaking are about monitoring duties for wildlife and the NEPA claims fall into two categories one that the a full environmental impact statement was required because of the significance or potential significance of the impacts and Required the NEPA analysis that was done the environmental assessment was not adequate Unless the court has a specific issue. It wishes me to address I would start with The argument that the government did not comply with this court's ruling in the first round the epic case regarding the Pacific Fisher and This court knows I'm sure the Pacific Fisher is a species that the Defendant Forest Service recognizes as sensitive which means it's trending towards Listing on the endangered species list and in fact the Fish and Wildlife Service found that the Pacific Fisher is Warranted for listing under the Endangered Species Act, but was precluded by other priorities Okay, so let's talk about this little guy Have a I do have some questions, and you know you all have been in this record for Yes, and it's huge Want to make sure I understand a couple things yes With respect to Habitat capability you think that the Forest Service has a misstatement in its materials My Question is what is the level of? Habitat capability you need for maintenance Your honor that's a very good question and and one problem is that the Forest Service did not Follow this court's order in the first or East Fork case That it should analyze the acreage needed by Pacific Fisher how much suitable Fisher habitat would remain after logging And what would therefore the project's effects be on the Fisher and the habitat capability model? This is something defendant itself created to comply with its Viability a species viability duties under NIFMA what they decided And I want to correct a page site in my brief. It's er 713 is the habitat capability model the Forest Service itself States that high quality habitat must be greater than 70% canopy What What happens here is that the Forest Service? Acknowledges that this project will reduce all all of the habitat that's being logged Which is almost a thousand acres to below that cat canopy closure And the reason the canopy closure is so critical is because the Fish and Wildlife Service in its finding The warranted but precluded findings said the canopy closure is the number one direct threat to Fisher viability The other the other important factor is the riparian corridor that they need that's not logged and they Before we go to the riparian corridor Go back to the canopy The medium in other words for maintenance and monitoring to the need the 50% Moderate habitat capability Efficient or do you need this higher level and where? Say you need the higher level in order to maintain Well, I don't believe the Fish and Wildlife Service made a specific finding about levels of canopy closure what they said was Canopy closure reduction by itself is the number one direct threat then we go to the Forest Service which says Here's how we'll define high quality. Here's how we'll define moderate quality your honor I believe that the the reasonable inference is that the high quality? More greatly ensures the viability of the Fisher whereas the moderate is just kind of moderate the problem with the Forest Service's analysis is that they Incorrectly state in their addendum that the new Fisher addendum at 315 to 316 that they don't expect that any Significant scale or intensity changes and be Fisher behavior will occur due to the changes in canopy closure That's just a conclusory statement. They don't make any explanation of why except that they say well There'll still be some big trees around There's nothing that says that what Fisher need is big trees what they need is canopy closure And so for the Forest Service to say there's no impact here There's not going to be any negative impact to Fisher is simply there's nothing to support that and that and because they haven't gone out and Surveyed for Fisher. They've refused to do that you can see at er 309 the Fisher addendum, which is from 2008 admits that there has been no monitoring of Fisher in the sale units at all and Most recent data they cite is from 2004 from units outside of this from areas outside of these sale units and even that data showed a decrease in Fisher Over time and yet they have refused to go survey for Fisher or to do any other work that would correlate Their ideas about habitat to the logging But all you have to do is look at their their own habitat capability model to see that there must be an impact from reducing Acres from high quality to moderate quality by definition. That's an impact. It's a reduction in the quality My question is it even if there's a reduction Yeah, no your honor this is not a case where we're saying that the Forest Service is pushing the Fisher Affirmatively clearly pushing them into the brink. They're already at the brink Okay, they already are warranted for listing under the Endangered Species Act So this is not a substantive claim that okay now you've done it they're going to go extinct tomorrow That is not our claim. This isn't an Endangered Species Act case. This is a case about information and Disclosure to the public and they have lied to the public and told the public this project will not Harm the Fisher and they have not disclosed to the public that their own habitat capability model Shows that there's going to be a reduction In quality of Fisher habitat from this logging project Let me ask you what the riparian corridor Took several questions about that  the Is it like a subset of that? Yes, if you look at er 713 the habitat capability model talks about the canopy closure, and then it talks about the How wide of a riparian corridor does the Fisher need and they need a 300 foot wide? covered Travel corridor this project is maintaining 50 foot buffers on streams Which is a 100 foot corridor? Nowhere is that acknowledged in the environmental assessment that this is going to reduce the quality of habitat by their own under their own model now Where this gets into surveys and monitoring is that they're also not using the habitat capability model correctly er 793 says that managers should assess the health and this is the Forest Service speaking Should assess the health of the individuals and then apply the model accordingly so first they're supposed to use the model to determine the level of habitat suitability, which is what they've done though they haven't disclosed that to the public and To assess the health of the population or nest site for that species, so they're supposed to then go validate their modeling At least periodically as we explained the LRM the Management plan requires annual if not site specific project specific Surveys to validate the models and to tell us. What is the trend of this species? They haven't done any surveys For this project they haven't done annual surveys. They haven't even done You know five years surveys for this area they have they've decided to not do any more surveys and they admit that This is Even though the Forest Service found specifically that it's feasible to monitor for these species that they chose as managed management indicator species er 794 They decided and this is a quote to analyze project level effects quote by forest scale habitat Monitoring and analysis alone. That's er 336 Let me ask you what would be the practical effect of a remand with respect to the point where you? Read a strong language you say that they've lied If they recast their Statements to include the information that you've indicated with that so It would certainly solve the disclosure problem. Yes, I don't believe that would solve the bigger problem, which is the failure to do surveys at any point to validate these models and Even the lands council versus McNair case which the defendants have cited did not say that they can just simply start using habitat A summary of what habitat is out there? What kind of habitat they have to at some point validate the models the models have to be? Have to have good data You're saying that they didn't actually do an assessment because they don't have any I know we don't have on the ground data We've already That that right they need something to validate the model as to the riparian corridor, or they need to Make changes so they have a 300 foot quarter, which is it well I think so the problem here is they made this habitat capability model several years ago and Frankly if they followed that model at least then we would know that their own Assumptions are being followed, which is we think that you know 70% canopy closure or more is high quality And at some point yes those models do need to be validated But they haven't even done that here they haven't even followed their own habitat capability model We be remanding for what would be if you got what you wanted on these points? What would that well so on in in the first case in the first go-around this court said Remanded and because the defendant had not analyzed the acreage needed by Pacific Fisher Proviability had not analyzed how much suitable habitat would remain after logging and that second point Most most blatantly has not been met here There's no analysis of how much suitable Fisher habitat either high medium or low is going to be left We do know that all the acres logged in this project will be reduced from high to at least Moderate and maybe too low, but they don't disclose the end result There's nothing below 50% doesn't that satisfy that point 50% if I am not mistaken is The bottom of the moderate scale, yeah, so Actually, no, I think that sorry I'd have to go look at that, but I believe that 50% goes into the low scale Okay, yes, there wasn't a question, but the record er 315 I think they say the canopy closure will be reduced from 60 to 90 to an estimated 60 to 70 percent There are 41 acres out of the 900 that are in spotted owl habitat. Those will stay From 60 to 70 percent the remainder the 860 or whatever Will be 50 to 60 percent. That's Er 34 paragraph 21 the answer admitting part of our complaint And What was described as the current habitat capability levels would be a violation and require some sort of? The Forest Service is allowed to Is allowed to certainly the Forest Service is allowed to log Fisher habitat they are certainly also allowed to Harm Fisher habitat what they aren't allowed to do is to do those things without full disclosure and without themselves fully Understanding what the impacts are going to be to viability now. They do acknowledge but not in the Er. I mean in the EA that this canopy closure will Last for 10 to 20 years. That's they they admitted that in their answer to our complaint in paragraph 70 I see I'm out of time and I will Assessment that er 110 states Fisher habitat within the project unit will be modified but current habitat Capability levels will not change That's what they say will not change and yet. That's a lie they apparently Are changing in at least two areas the canopy level and Riparian corridor, and they're saying well That's okay because it won't affect or undermine the ultimate habitat of the Fisher Can they do that? Well, they can't they're not telling the truth when they do that and what they have to do under NIF ma So under NEPA they must disclose the true impacts and so they haven't complied with NEPA because they haven't Explained what happens under their own habitat capability model under NIF ma. They can't do that because they have to They have to have a cogent explanation about why they can get away with Not doing surveys in this area when under their own model There's going to be an admitted reduction in quality of Fisher habitat. So they haven't gone out and Surveyed for Fisher so they can say all right Here's a Fisher den a nest and this is going to be logged and and here's the impact instead They're using models and then they're not even using the model. So they're they're just thoroughly violating NIF ma in this case. Thank you Thank you Good morning, your honors. I may have pleased the court. My name is Todd Pickles. I represent Appalee US Department of Agriculture Forest Service Judge McEwen I'd like to begin by answering the question you asked about to what level must the forest be monitored are managed Under the habitat capability model. It's a moderate level. That's within the forest plan That is what is being managed in this case with respect to Pacific Fisher. So we are meeting the requirements of the forest plan with respect to the riparian reserves issue The the forest plan talks about travel quarters not riparian reserves with respect to the limited logging that will happen in riparian reserves in the Pacific Fisher habitat The that only is going to occur with respect to ephemeral or seasonal streams. The perennial streams will have no logging And the ultimate conclusion and I think this is the most important point that is emphasized in lands council, too Is that the fact that there is some disturbance to habitat does not preclude the application of a habitat analysis? Model that's exactly the argument that the court rejected in lands council to McNair versus lands council Which we've referred to as lands council to the other issue that this court Addressed in the en banc decision in lands council to was the argument that's again been raised here about the lack of on the ground studies within the analysis area this court Reversed prior decisional law in the circuit which had indicated that such on-the-ground analysis was required lands council to and I think this is an important part because Plaintiffs refer in their briefs that lands council to hasn't changed the case law. It merely affirmed prior case law. That's absolutely not correct lands council to is an en banc decision and the reason it was en banc is because the court found it necessary to Clarify prior decisional case law and one of those cases is this court is aware Had required in the ecology center versus Austin and on the ground analysis That is not the case the fact that there is no quote on the ground Surveys does not make the habitat analysis infirm As you can see we focused on these statements and counsel for conservation Congress says When there would be a reduction Would you respond to that specific point? Yes, your honor, and I think it actually raises two issues The first is that there is no reduction there will be not one acre of suitable Fisher habitat Reduced that is the determination of the Forest Service made they did it based on studies. This is not anecdotal evidence. These are scientific Academic studies that were cited in the Pacific Fisher addendum They applied the habitat capability model and the determination was made that the suitability of the Pacific Fishers Habitat will not be reduced and that is the determination that's made Within the Forest Service's expertise. That is precisely the kind of is that because There will Be at a minimum the moderate level which is talked about in the habitat capability model that is part of it your honor certainly we're managing we have to comply with the Terms of the the forest plan and the forest plan indicates and I believe this is it the supplemental excerpts of record 280 that The plans must be managed to a moderate capability level I think there may be some just that's where one disagreement is it seems to me because like I think conservation Congress is saying no if If you reduce the habitat capability and it was 70 in some places and then you reduce it down That you've reduced habitat capability and your response to that is that But not below what's required by what your plans say what two things your honor the the plan itself Does not recall indicates that a moderate Capability is sufficient. That's what's happened here. I think Correct your honor. It's in the habitat capability. Well, it's in the forest planet and that's again cited at our excerpts of record 280 I'm not understanding because the First you say in the EA that you're not going to Modify the habitat below the habitat capability levels as displayed in table 13 I'm looking at a 110 And then some of that habitat is over 70 I You've now modified that have you not to reduce it down to moderate from high capability Correct your honor there. It seems to me at one place you say in the EA. We're not going to change it It will not be below its current habitat capability now in Response and in your brief you say well a few acres have been reclassified From high to moderate, but that doesn't undermine our conclusion with respect to the Fisher Habitat in general And it seems like there's an inconsistency there would you help us and that's and I apologize if I'm not articulating well That there's two pieces of the or at least two pieces of the analysis that the Forest Service used to determine the effects on habitat the Suitability of the Pacific Fishers habitat, and that was the question this court previously Remanded that we address and that's what this court and lands council to and all of its other decisional case laws is emphasized one of the pieces was to apply the habitat capability model and that model has to be managed to a moderate level and the determination was made that approximately 20 to 26 acres of high capability Habitat maybe we don't we don't know for certain because if there's overlap for example with If it happens to fall within the riparian Reserves that are along in a perennial stream there may not be logging if it's sloped is unstable it may not be logged but potentially 20 to 26 acres may be reduced from high to moderate that's fits well within the Habitat capability model, but that model is only one piece of the analysis the analysis again ultimately is focused on What whether or not the suitability of the habitat will be retained? The other pieces of the analysis were based on the the studies That were employed by the professional Biologist retained are as part of the Forest Service and also after the this court Reversed and there's an injunction with respect to the project the project was halted about halfway through the Forest Service was able to go back and look at what happened in the the areas that had been thinned under the project before it was halted and It was a determination was made that the habitat in those areas hadn't the the suitability hadn't been reduced So in a way we have benefit of the fact that the court halted it midway and we were able to validate the assumptions that were made initially and this is all set forth in the Pacific Fisher addendum as well as the the EA I Do want to make clear that we have addressed the the issue that was raised or that this court raised in the first Go around the East Fork one case. We have determined again that no suitable Fisher habitat will be reduced and therefore based on that determination There will be no loss of viability. That's the opinion of the Forest Service That is the type of opinion that this court has granted deference to from Inland Empire Through lands council to and most recently in the Ecology Center versus Castaneda case It Let me explain again about the riparian reserves versus the travel corridors Correct your honor. The there's a the requirement that the travel corridors Have limited logging and and and within a I believe 300 foot Span and and and part of the findings that are in the Pacific Fisher addendum Indicate that one of the travel corridors is along Waterways at the the thin dirt prescriptions under the plan that will limit or actually preclude thinning With there's an areas associated with perennial streams that you know constantly flowing streams. I think there are only approximately 74 acres of riparian reserves what that would be even within the Habitat at all and it's unclear to what extent those would have Thinning again if they're ephemeral streams there may be and that would be limited to 50 feet if the perennial there wouldn't But I think stepping back the the most important part of that analysis focuses again on is there going to be an appreciable effect on the suitability of the habitat and The fact that there is some change to habitat does not preclude The habitat analysis, that's what was one of the most important points of the lands council to decision and that's the determination that's been made again by the The professional biologists in this case based on studies based on the the post East fork one data position There was You need 300 wide here you only have 100 in some places and in any event We didn't use the Protocol that's in the suitability model. I think that's what I heard so If you would respond to that Yes, your honor that I think in our papers We've attempted to address the argument that somehow we haven't applied the habitat capability model correctly We've explained that we looked at for example The the presence of oak is a hardwood tree and that's within the capability model I think we've attempted to address this issue of the the travel corridor being managed at 300 and that to the extent there is in limited circumstances a Riparian reserve that would fall within that definition If it's a femoral or a seasonal stream, it's going to be limited to the hundred foot corridor and that Even within that determination Again, the habitat cave and I guess maybe I should step back The habitat capability model is a tool that the Forest Service applies in order to determine Whether or not the habitat analysis there's going to be some effect on diversities, which is what the NFMA mandates and in this case applying the tool along with the other elements to the analysis the the post East Fork one review and The the scientific literature and studies that were cited the determination was made that there will be no effect on the habitat Well, let me just understand what you're saying the I'm looking at the habitat capability model er 713 and it's got The moderate required level is 300 to 600 feet Er 713 Then It appears that at least you say only 74 acres of the riparian reserves Might be subject to logging as close to as 50 feet instead of the 300 to 600 feet So that'd be 100 feet total 50 feet on each side That's a change. Is it not you argue in your answering brief? Well, the habitat won't be degraded And my and my question is why not And I get and I think your honor and I and now I think I understand We don't read this prescription this to mean there could be no treatments within And there we don't read this to mean that nothing can ever be done within 300 foot travel corridor What this means is that the habitat must be maintained within that corridor? And I don't know and I don't think there's been anything cited in the record that indicates that somehow within this quarter nothing can ever be done But and and therefore and determination has been made that even with the limited logging that's going to occur and it this is limited logging That it may be occurring within a travel corridor The ultimate result is that this the suitability of that habitat will not be affected That's the command of this court on East Fork one. That's what this court from Inland Empire to the present is required And the basis Under this question So on those 74 acres you're saying that Well you if there's Waterway you have an Obligation to protect habitat and 300 feet of the waterway that right well you have an obligation To manage you know within this moderate. It's required to manage at the moderate level the canopy within that travel corridor Correct and and we're not we're not going to be changing that your honor, so it's it's not That's just defining the shape of the table for what you have to maintain Habitat it correct your honor and and and that's why we're not we're not in contravention of our own rules We're maintaining that within trial we're actually maintaining this within the habitat itself is that then because I think this is where at least I'm confused The hundred or 50 and 50 where does that come in that's within the project Parameters say within that there will be no logging at all So so then you're saying if there's no logging at all within that in the Also, not doing anything that would degrade habitat My time's expired may respond to your question. That's correct your honor And that's I guess the the point I've been trying to stress is within this travel corridor we're still managing to all of the requirements with respect to canopy closure and We're actually doing that beyond just the the travel corridor, but within this hundred Foot corridor, there's not going to be any thinning or you know prescription And therefore we're consistent, and that's why I guess the determination has been made With all of these pieces that there'll be no effect on the habitat the suitability of the Pacific fixtures habitat Thank You owners. I Have another correction to the ER site the the habitat capability model seems to be on two different pages Er 713 has the corridors, but er 319 has the canopy Requirements and what that page says is that Greater than 70% which is high canopy high capability is preferred That's the word that's used the and then your honor was correct 40 to 69 percent is still within the moderate range and that is Required is the quote and so you're not suggesting that They need to meet the preferred, are you? No, your honor. We're saying they need to have scientifically Accurate statements now what they've done is in the addendum, which was done in 2008 in response to this court's ruling They have basically taken the habitat capability model and fudged it and said well You know even if we and they don't even say this But what they've really done is say if we log below if we reduce canopy below 70% As long as we have these other things snags and and a few big trees We're not going to have any impact to fisher habitat, which simply flies in the face of their own habitat capability model It's going back up, I'm sorry Thank you your honors Well yes I would urge you to look at the NEPA issues because they are Significant as well, and I know you will look at that, and I also want to Remind the court that I believe this was put on an expedited schedule because we believe logging will be Resuming pretty quickly with the weather changing. Thank you your honors Thank you. Thank both of you and also for your briefing in this matter the case of conservation Congress Versus Forest Service is submitted and the court is adjourned for the morning
judges: Zilly, Hall, McKeown